**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MOUA VANG ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 04 C 4227 |
| v. ) | |
| REDA AUTO PORT ) | HONORABLE DAVID H. COAR |
| ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are parties' cross-motions for summary judgment.

**I.   FACTS**

Plaintiff Moua Vang, a Wisconsin resident, ("Vang" or "Plaintiff") purchased a 1994 Lexus LS 400 from Veda Auto Port ("Veda" or "Defendant"), a used car dealership in Villa Park, Illinois, on November 26, 2003. The purchase price was $6,800.00. Vang and Veda's president, Kenny Reda, completed and signed a Bill of Sale on November 26, 2003, which reflected a mileage of 142,018. The Bill of Sale included a hand-written notice that the car carried a "REBUILT vehicle frame warranty 30 days." When he bought the Lexus, Vang states that the odometer also read 142,018. At the time he purchased the Lexus at issue in this case, Vang had been looking at used 1994 Lexus cars for "a while." He had been to see more than one other possible purchase. On the day prior to the sale, Vang test-drove the Lexus, going up to approximately 55 or 60 miles per hour. The Bill of Sale form provided a box to check if the mileage disclosed was not the actual mileage of the automobile in question. This box remained

-1-

unchecked. Approximately two weeks after the sale, Vang received the title to the Lexus via mail delivery. Kenny Reda, president of Reda Auto Port, signed the statutory mileage disclosure on the reverse side of the title and disclosed a mileage of 142,018. The front of the title document listed the Vehicle Identification Number of the Lexus, the year, make and model, and the owner's name and address. The pre-printed section of the title included an odometer reading and a space marked "Legend(s)." A sticker printed with a bar code was affixed to the title in such a way that it completely covered the "Legend(s)" space and partially covered the "Odometer" reading. An odometer reading beginning with "07392" was, however, visible. The owner on the title was identified as Auto Connect Incorporated, a Hammond, Indiana entity. The front of the title indicated that Auto Connect Incorporated sold the Lexus to Reda Auto Port on September 30, 2003. The reverse of the title had three spaces for re-assignment by dealer information. The first of these spaces had been completed, identifying the dealership at Reda Auto Port and the Purchaser as Moua Vang. In addition, the form specified that the registered dealer "certif[ied] to the best of [its] knowledge that the odometer reading is the actual mileage of the vehicle" unless one of two exceptions was met. The vehicle's mileage was filled in the space provided as 142,018. Neither of the two boxes for exceptions to the actual mileage were checked.[1]

Between November 26, 2003, and April 2005, Vang put approximately 7,000 miles on the car. He drove it several times a week, sometimes more often. When he purchased it, he stated that the brakes were "a little shaky," but noted that he had gotten them repaired and that they

---

[1] The first exception provides that "[t]he odometer reading stated is in excess of the mechanical limits"; the second exception states that "[t]he odometer reading is NOT actual mileage. WARNING – ODOMETER DISCREPANCY."

subsequently operated normally. In addition, he noted that the hood latch sometimes did not catch on the first attempt and that the driver's door was occasionally hard to close in the winter months. Generally, however, Vang stated that the car performed fine.

After receiving the Lexus' title from Reda Auto Port, Vang did not contact Reda. Instead, he had his local Wisconsin attorney send a letter to Reda, asking for a refund of $3,000 plus attorney's fees because of what his attorney described as misrepresentations about the vehicle. Specifically, Vang's attorney noted that the title described the Lexus as a "Rebuilt Vehicle" and stated that "Odometer-is not actual." At some later date, Vang retained a Chicago-area attorney, who sent a subsequent letter to Reda Auto Port. This letter[2] stated that Vang revoked acceptance of the Lexus, cancelled his contract, and demanded "a complete undoing of the transaction, meaning cancellation of the sales contract, buy-back of the car, and return of all [Vang's] money, plus $500.00 in attorney's fees." Def.'s L.R. 56.1(a)(1) Stmt., Ex. D. On June 24, 2004, Vang brought the present suit before this Court, alleging violations of the Federal Odometer Act, 49 U.S.C. § 32705, and related regulations, 49 C.F.R. § 580.5(c), (f), (h), the Magnusson-Moss Warranty Act, 15 U.S.C. § 2310(d), and the Illinois Commercial Code, 810 ILCS 5/1 *et seq*.

## II.     LEGAL ANALYSIS

As a threshold matter, this Court must address the issue of its jurisdiction over the claims asserted in Plaintiff's complaint. A Court may raise subject matter jurisdiction *sua sponte* at any time. *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999).

---

[2] The Defendant's L.R.56.1(a)(1) statement asserts that the letter from Dmitri Feofanov of ChicagoLemonLaw.com was dated May 11, 2004. The copy provided to this Court, however, is so faint that the date is illegible.

### A. Subject Matter Jurisdiction Under Magnusson-Moss Warranty Act

The Magnusson-Moss Warranty Act requires that Plaintiff plead an amount in controversy in excess of $50,000. 15 U.S.C. §§ 2301-12. Under the applicable law in this Circuit, the formula for calculating the amount in controversy is the replacement cost minus the value of the used car minus the use value obtained from the allegedly defective car. *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 406-406 (7th Cir. 2004); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998). There is no set of facts before this Court that would permit the Plaintiff to meet the $50,000 statutory minimum amount in controversy requirement. The purchase price of the car was $6,800, even before Vang drove it for an additional 7,000 miles. The price of a replacement 1994 Lexus LS 400 is $6,800, because that is what Vang paid for the allegedly defective vehicle in question. *Schimmer*, 384 F.3d at 406. Taking the facts in the light most favorable to Vang, this Court will assume that the alleged odometer fraud renders the vehicle worthless. Under the applicable formula, the cost of the replacement vehicle ($6,800) minus the present value of the defective car ($0) is $6,800. From this, the Court must further subtract some amount that Vang received as use value during the time he has owned and operated the vehicle. There is no way that this figure can satisfy the $50,000 amount in controversy requirement necessary to establish subject matter jurisdiction over this claim.

In his Count IV, Plaintiff alleges violations of both the Illinois Commercial Code and the Magnusson-Moss Warranty Act. For the reasons stated above, there is no subject matter jurisdiction over the Magnusson-Moss Warranty Act claim in this Court. In addition, this Court declines to exercise supplemental jurisdiction over the state law claim.

Accordingly, this Court, on its own motion, hereby dismisses Counts III and IV of Plaintiff's complaint for lack of subject matter jurisdiction.

B.   **Federal Odometer Act**

The parties have filed cross-motions for summary judgment on Plaintiff's claims under the Federal Odometer Act. Under the Federal Odometer Act, a transferor must provide written disclosure of a vehicle's mileage upon transfer. The Act authorizes the Secretary of Transportation to prescribe the procedures for such disclosure. The National Highway Traffic Safety Administration issued the following regulation: "In connection with the transfer of ownership of a motor vehicle, each transferor shall disclose the mileage to the transferee in writing on the title or ... on the document being used to reassign the title." 49 C.F.R. § 580.5(c). Vang contends that Reda Auto Port intentionally failed to disclose the title to the Lexus with the intent to defraud Vang as to the actual mileage of the car. Reda Auto Port alleges that it disclosed the actual mileage of the car on both the Bill of Sale and the title. Furthermore, Reda asserts that the actual mileage was the mileage reflected on the odometer, and that the discrepancy on the title was due to a "clerical error" made during a prior assignment. Neither party addresses the question of why this "clerical error," which apparently occurred some eight months prior to the sale to Vang, went undiscovered and uncorrected. This Court has reviewed the evidence the parties provided and denies both motions for summary judgment.

Reda Auto Port contends that the Seventh Circuit's recent decision in *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708 (7th Cir. 2005), supports summary judgment in its favor. The holding in *Ioffe*, however, was narrower–albeit only just–than the claims alleged in the instant case. In *Ioffe*, the plaintiff alleged a violation of the Federal Odometer Act because a used car

dealership failed to disclose that the Toyota Tercel he purchased was rebuilt. The Seventh Circuit held that "an Odometer Act claim that is brought by a private party and is based on a violation of [49 C.F.R.] § 580.5(c) requires proof that the vehicle's transferor intended to defraud a transferee with respect to mileage." *Ioffe*, 414 F.3d at 709. In this case, the evidence is insufficient for this Court to determine, as a matter of law, that there is no disputed material fact regarding either Defendant's intent to defraud with respect to mileage or the existence of any alleged odometer fraud.

      The parties have failed to provide more than conclusory statements in support of their respective positions. Neither party has provided evidence that would tend to establish what the actual mileage of the Lexus actually is. Vang argues that the allegedly defective title is sufficient to establish fraud, but the fact that Reda Auto Port disclosed the Lexus' mileage as 142,018 on the Bill of Sale tends to negate an inference of intent to defraud with respect to the car's mileage. Given the scanty evidence provided and its insufficiency to establish, as a matter of law, that there was an intent to defraud or that a fraud was actually perpetrated, this Court denies the parties' cross-motions for summary judgment.

## Conclusion

For the foregoing reasons, both Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment are denied. Plaintiff's Counts III and IV are dismissed for lack of subject matter jurisdiction.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **September 20, 2005**